United States District Court
Southern District of Texas
**ENTERED**
January 13, 2022
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INTERNATIONAL SHIP REPAIR AND MARINE SERVICES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-19-1049 |
| | § | |
| GREAT LAKES DRUDGE AND DOCK COMPANY, LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Plaintiff International Ship Repair and Marine Services, Inc.'s Traditional Motion for Partial Summary Judgment (Document No. 36) and Defendant Great Lakes Drudge and Dock Company, LLC's Motion for Partial Summary Judgment on Liability (Document No. 48) have been referred to the undersigned Magistrate Judge for a Memorandum and Recommendation. Having considered the motions, the responses, the additional briefing, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that each Motion for Summary Judgment be DENIED.

## I. Background

This is a relatively straightforward case. Plaintiff International Ship Repair and Marine Services, Inc. ("ISR") was to perform certain repairs in 2016 on the Dredge Texas for Defendant Great Lakes Drudge and Dock Company, LLC ("Great Lakes"). Whilst performing those repairs, additional items were added, and the completion date for the work was extended. When the last agreed-upon completion date passed (July 10, 2016) without the work being completed, Great Lakes

had the Dredge Texas towed to another facility and had the work completed by someone else.

ISR filed suit against Great Lakes, asserting claims for breach of contract, breach of an implied covenant to not hinder, prevent or interfere with performance, and quantum meruit. Great Lakes filed counterclaims against ISR for breach of contract, negligence/gross negligence, and bailment. Great Lakes maintains that it has paid ISR all the amounts it was due, and that it is due both liquidated damages under the parties' agreement for the delay in the repair work, and monetary damages for damage to the Dredge Texas' ladder while in the custody and control of ISR. ISR, in contrast, maintains that Great Lakes continues to owe it for work it performed on the Dredge Texas, and that Great Lakes breached the parties' contract when it had the Dredge Texas towed and repaired by another facility/entity.

Both sides have filed Motions for Summary Judgment, with ISR seeking summary judgment on all of Great Lakes' counterclaims, and Great Lakes seeking summary judgment on the liability aspect of both ISR's claims and its own counterclaims. The Motions for Summary Judgment are ripe for ruling.

## II. Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary

judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc*., 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

## III. Discussion

The business relationship between ISR and Great Lakes was governed by a Master Service Agreement ("MSA") entered into on October 8, 2015, pursuant to which ISR was "added to [Great Lakes'] list of approved vendors." MSA at 1.1. The MSA was to "remain in effect until cancelled by either Party [ ] by giving the other Party thirty (30) days written notice." MSA at 1.2. The MSA further provided with respect to the cancellation: "If work then being performed pursuant to this Agreement or any Work Order extends past such thirty (30) day period, then the cancellation shall not be effective until that work is completed." *Id.* The MSA covered all aspects of the parties' business relationship and was to be, "in conjunction with the Work Orders, in whatever form, and submitted in connection with the repair of [a] Vessel," the "entire agreement between the Parties . . . and constitute and supersede all prior agreements, representations and understandings of the Parties, written or oral." MSA 3.1. It is, therefore, within the context text of the MSA's terms, coupled with the terms of the Work Orders related to the Dredge Texas, that both sides' claims must be considered.

### A. ISR's claims

ISR claims that Great Lakes breached the parties' agreement when it had the Dredge Texas towed and repaired elsewhere without providing ISR with the 30 days notice as provided for in the MSA. ISR further claims that Great Lakes interfered with the parties' agreement and ISR's performance relative to the repairs for the Dredge Texas when it "routinely failed to timely review and approve ISR's request for changes," and that such conduct constitutes a "breach of the implied covenant not to hinder, prevent, interfere with or delay ISR's performance." Finally, ISR claims, as an alternative basis for relief, that it is due considerable sums ($4,500,000.00) for work

performed, which it was not compensated for, on the equitable theory of quantum meruit.

**1. Breach of Contract Claim**

Great Lakes argues in its Motion for Partial Summary Judgment that summary judgment is warranted on ISR's breach of contract claim because ISR breached the parties' contract first by "failing to complete work" by the agreed upon deadline of July 10, 2016, and that ISR cannot recover on a breach of contract claim based on any subsequent breach. In addition, Great Lakes maintains that the 30-day termination provision in the MSA did not apply because Great Lakes did not terminate the MSA – it only terminated the work that was to be done on the Dredge Texas.

A breach of contract claim requires proof of: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *American General Life Ins. Co. v. Kirsch*, 378 F. App'x 379, 383 (5th Cir.2010); *see also Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d345,351 (Tex.App.-Houston [1st Dist.] 2001, no pet.). "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004). Whether the prior breach is material is generally a question of fact for the jury. *Triton 88, L.P. v. Star Electricity, L.L.C.*, 411 S.W.3d 42, 58 (Tex.App.-Houston [1st Dist.] 2013).

Here, the summary judgment evidence raises genuine issues of material fact on which party first breached a "material" provision of their agreement. ISR maintains that a material breach occurred when Great Lakes towed the Dredge Texas to, and had it repaired at, another facility on August 26, 2016, without providing ISR the thirty days notice required by § 1.2 of the MSA. Great

Lakes, in contrast, maintains that a material breach occurred when ISR did not have the work on the Dredge Texas completed by the July 10, 2016 performance deadline.

The summary judgment evidence shows on June 24, 2016, prior to the contract performance completion date of July 10, 2016, ISR's dry dock collapsed. *See* U.S. Coast Guard Report of Marine Casualty (Document No. 48-9); John van Grieken Marine Survey Report (Document No. 48-10). That collapse resulted in the Dredge Texas' ladder, which had been detached from the Dredge Texas while work was being done on the Dredge Texas, being damaged by virtue of being underwater for several weeks. Grieken Survey Report (Document No. 48-10). On July 15, 2016, Great Lakes sent to a letter to ISR, invoking the MSA's liquidated damages provision(s) from July 11, 2016 forward. (Document No. 48-22). Then, in correspondence dated August 19, 2016, and August 25, 2016, Great Lakes advised ISR of its intent to have the Dredge Texas towed to, and repaired at, another facility. (Document Nos. 48-24 and 48-27). That then occurred on August 26, 2016.

It cannot conclusively be determined in this record whether ISR's failure to complete the work on the Dredge Texas by the performance deadline of July 10, 2016, was a first material breach of the parties' agreement. The MSA provides for liquidated damages in the event of a performance delay. The MSA provides for this as follows:

> **11.0 DELAY**
>
> 11.1 The Shipyard agrees that if the Work is not completed within the Working Time stipulated herein, the Shipyard shall, for the period the Vessel is thereafter delayed, pay to the Owner Liquidated Damages at the rate specified attached hereto as Exhibit C and made part hereof.

In addition, Exhibit C, as it related to the Dredge Texas, stated:

> . . . the Shipyard agrees that any delay beyond the Working Time shall cause harm and damages to the Owner and agrees to pay the Owner liquidated damages, which it agrees is not a penalty, of **$25,000** per day for each day beyond the Working Time

> ("Liquidated Damages"). In no event shall Liquidated Damages exceed **20%** of the total contract price.

(Document No. 8-2). Given the agreed upon damages for delay in performance, the uncontroverted summary judgment evidence in the record that the liquidated damages amount was the product of substantial negotiation, and the correspondence from Great Lakes to ISR dated July 15, 2016, in which the liquidated damages provision was invoked,[2] it cannot be said, as a matter of law, that ISR's failure to complete the work was a first material breach that excused Great Lakes from any of its performance obligations under the parties' agreement. A delay in performance was a possibility anticipated by the parties and accounted for in the contract itself, and it is for the finder of fact to determine whether ISR's performance delay was a "material" breach of that contract. *See e.g. Sam Kholi Enterprises, Inc. v. Thompson*, No. W-08-CV-105, 2009 WL 10669140, at *2 (W.D. Tex. Feb. 4, 2009) (finding genuine issues of material fact as to "whether each breach was a material breach, and which party breached the contract first, possibly excusing the other party from performing"). As for Great Lakes' argument that its termination of the work to be performed by ISR on the Dredge Texas on less than thirty days notice does not give rise to a viable breach of contract claim, such an argument disregards the terms of the MSA itself. As set forth above, the terms of the MSA, coupled with the terms of any Work Order, were to govern the parties' relationship. Great Lakes has pointed to nothing in any Work Order related to the Dredge Texas that allowed it to terminate the work on the Dredge Texas on lesser notice to ISR than that required by section 1.2 of the MSA.

---

[2] In that letter invoking the liquidated damages provision, Great Lakes urged ISR to keep working to "complete the contracted work as quickly as possible." (Document No. 48-22).

Because there are genuine issues of material fact as to which party breached the agreement, which party breached the agreement first, and which breach was a "material" aspect/provision of the agreement, summary judgment is not warranted, for either side, on the competing breach of contract claims.

**2. Implied Covenant Claim**

Great Lakes argues in its Motion for Partial Summary Judgment that summary judgment is warranted on ISR's implied covenant claim because such a claim is rarely recognized, and because it is not a viable claim given the express terms of the MSA which both governed the parties' relationship and which provided a procedure for ISR to submit, and Great Lakes to consider and approve, any requested changes in the work to be performed on the Dredge Texas.

"Texas law imposes an implied duty to cooperate 'in every contract in which cooperation is necessary for performance of a contract.'" *In re Reagor-Dykes Motors, LP*, No. 18-50214-RLJ-11, 2021 WL 1219537, at *12 (Bankr. N.D. Tex. Mar. 30, 2021) (quoting *Bank One, Tex., N.A. v. Stewart*, 967 S.W.2d 419, 434 (Tex. App.—Houston [14th Dist.] 1998, pet. denied). That duty "prohibits a party to a contract from hindering, preventing, or interfering with the other party's ability to perform his contractual duties." *Id.* "In a case where a duty to cooperate may be implied, the duty prohibits a party to a contract from hindering, preventing, or interfering with its counterpart's ability to perform the contract." *Miller v. Ret. Sys. Grp., Inc.*, No. CV H-09-834, 2012 WL 13156988, at *12 (S.D. Tex. Mar. 2, 2012), *report and recommendation adopted*, No. CV H-09-834, 2012 WL 13156809 (S.D. Tex. Apr. 3, 2012); *see also Baerg Real Prop. Tr. v. Garland Sol., LLC (In re Baerg Real Prop. Tr.)*, 585 B.R. 373, 387 (Bankr. N.D. Tex. 2018) ("a duty to cooperate implies that one party will not prevent the other party from performing the contract.").

Here, Great Lakes maintains that a duty to cooperate cannot be implied in the parties' contract because the contract itself set forth detailed provisions for the submission and consideration of work change orders, and it was only ISR that had to abide by certain time constraints. While it is true that the MSA addressed in detail the process for change order submissions and consideration, and also provided for negotiated extensions of work completion deadlines, *see* § 5.4 of MSA, the MSA overall reflects both sides' interest in the complete and timely performance of the work. Such complete and timely performance of the work was, necessarily, contingent upon both sides cooperating and efficiently agreeing upon change order items. Because there is some summary judgment evidence in the record that Great Lakes' conduct, at times, hindered and impeded ISR's performance, summary judgment is not warranted for Great Lakes on ISR's implied covenant claim.

**3. Quantum Meruit Claim**

Great Lakes argues in its Motion for Partial Summary Judgment that summary judgment is warranted on ISR's quantum meruit claim because such a claim is not legally viable where there is a written contract that governs the parties' relationship and any payment due relative thereto.

As argued by ISR in response to Great Lakes' Motion for Summary Judgment, and as is borne out in ISR's pleading, ISR's quantum meruit claim was pled "in the alternative," which is allowed for under Texas law. *See Sw. Bell Tel. Co. v. Fitch*, 643 F. Supp. 2d 902, 911 (S.D. Tex. 2009) ("Although a party 'generally cannot recover under quantum meruit when there is a valid contract covering the services or materials furnished,' the party 'may, however, seek alternative relief under both contract and quasi-contract theories.'"). As Texas law is which was to govern the MSA and the parties' relationship, *see* § 31.1 MSA ("It is understood and agreed that this Agreement is to be governed and interpreted under the law of the State of Texas, without regard to

its conflict of law principles."), ISR can plead and maintain a quantum meruit claim under Texas in the alternative to its breach of contract claim. Moreover, given ISR's allegations and Great Lakes' admissions that ISR completed much (but not all) of the work, and that it had the remainder of the work, and the repair of the Dredge Texas' ladder, performed at another facility, ISR's quantum meruit claim arguably falls within the exception to the general rule that a quantum meruit cannot be maintained where there is an express agreement between the parties. In *Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 858 (Tex. App. 2010), the Court explained:

> As a general rule, a plaintiff who seeks to recover the reasonable value of services rendered or materials supplied will be permitted to recover in quantum meruit only when there is no express contract covering those services or materials." *Truly v. Austin*, 744 S.W.2d 934, 936 (Tex.1988). There are two exceptions to the general rule. The first applies where a party partially performs a contract, but was prevented from completing the contract due to the other party's breach. *Id*. . . . Another exception exists when a plaintiff partially performs a unilateral contract. *Id*. at 937. In dicta, *Truly* stated that Texas courts have allowed a breaching contractor to recover under quantum meruit where the owner has accepted and retained some benefit as a result of a contractor's partial performance.

Here, given the allegations and the summary judgment evidence that ISR partially performed the contract and was prevented from completing the contract due to Great Lakes' breach, and where ISR pled its claim of quantum meruit in the alternative, summary judgment is not, on this record, available on ISR's quantum meruit claim.

**B. Great Lakes' Counterclaims**

In three counterclaims, Great Lakes claims that ISR breached the parties agreement by failing to complete the work on the Dredge Texas by the July 10, 2016 deadline, that ISR's negligence resulted in the collapse of its dry dock facility, at which the Dredge Texas was being repaired, resulting in both considerable delay in the work ISR was to perform on the Dredge Texas, as well as damage to the Dredge Texas' ladder, and that any damage to the Dredge Texas, and its

ladder while in ISR's custody and control, is recoverable under a theory of bailment.

ISR, in its Motion for Partial Summary Judgment, does not directly seek summary judgment on any of Great Lakes' counterclaims. Instead, ISR challenges, with its Motion for Partial Summary Judgment, Great Lakes' ability to recover certain damages, arguing that Great Lakes cannot, based on the terms of the MSA, recover any consequential, punitive or special damages, that Great Lakes cannot recover both actual damages and liquidated damages, that no recovery of any damages is available on a theory of bailment given the terms of the MSA, that Great Lakes cannot recover any damages related to the towing of the Dredge Texas and the repair of its ladder by someone else given Great Lakes' material breach of the MSA's termination provision and Great Lakes' failure to mitigate its damages. Great Lakes, in its Motion for Summary Judgment, argues that summary judgment in its favor is warranted on its counterclaims because the summary judgment evidence shows: (1) that ISR breached the parties' agreement first when it failed to complete the work by the agreed upon deadline of July 10, 2016; (2) that ISR's negligence in maintaining its dry dock led to the dry dock collapse, which resulted in both ISR's failure to complete the work by the agreed upon deadline, and the damages to the Dredge Texas' ladder; and (3) that the damage to the Dredge Texas' ladder occurred while the Dredge Texas was in the sole custody and control of ISR (bailment) and that it is entitled to recover the costs of the repair of the ladder independent of the damages provided for in the MSA.

**1. Breach of Contract Counterclaim**

As set forth above, genuine issues of material fact exist on the parties' competing breach of contract claims. As for ISR's arguments about the damages available on Great Lakes' breach of contract claim, the MSA provides as follows: "In no event shall either Party be liable for any claims

of indirect, incidental, consequential, punitive or special damages." MSA § 19.3. In addition, as set forth above, there is a liquidated damages provision, which provided for damages of $25,000.00 per day, up to 20% of the contract price, for any delay in work completion/performance. Any damages resulting from, or attendant to, a breach of the parties' agreement, is governed by that agreement's damages provisions. As such, as provided for in the MSA, damages related to any breach of the parties' agreement cannot include "indirect, incidental, consequential, punitive or special damages."

**2. Negligence/Gross Negligence Counterclaim**

Great Lakes argues that the uncontroverted summary judgment evidence establishes that ISR was negligent and/or grossly negligent in the maintenance of its dry dock and that such negligence damaged Great Lakes in terms of the timely completion of the work it engaged ISR to perform as well as the damage that was done to the Dredge Texas' ladder due to the dry dock collapse. ISR did not move for summary judgment on Great Lakes' negligence claim, but does argue, in response to Great Lakes' Motion for Partial Summary Judgment, that the negligence claim is, in light of the parties' written agreement, barred by the economic loss rule. ISR also argues, in its own Motion for Partial Summary Judgment, that Great Lakes cannot recover any lost profit or punitive damages on any claims (negligence, bailment or breach of contract) given the terms of the MSA.

Great Lakes has submitted substantial, uncontroverted summary judgment evidence that ISR was negligent in its maintenance of its dry dock, and that such negligence caused the dry dock to collapse. *See* Defendant's Motion for Summary Judgment (Document No. 48) and evidence cited therein (pp. 5-10). Great Lakes has, however, not established that the economic loss rule is inapplicable to its negligence claim. In Texas, "[w]hen the only loss or damage is to the subject

matter of the contract, the plaintiff's action is ordinarily on the contract." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex. 1991); *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W. 3d 407, 417 (Tex. 2011) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone."). That principle is known as the "economic loss rule," and it "precludes recovery in tort when the loss complained of is the subject matter of a contract between the parties." *Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016). In determining whether the economic loss rule applies, courts look to "the source of the defendant's duty and the nature of the claimed injury." *Levco Construction, Inc. v. Whole Foods Market Rocky Mountain/Southwest, L.P.*, 549 S.W.3d 618, 635 (Tex. App.–Houston [1st Dist] 2017). Great Lakes alleged in its pleading, in support of its negligence claim, that ISR had a "duty," to Great Lakes, *see* Counterclaims ((Document No. 8) at 12 ("ISR breached its duty to Great Lakes by its negligent and/or grossly negligent performance of (or negligent and/or grossly negligent failure to perform) the work requested"), but Great Lakes does not argue (or even allege) that such a duty arose outside of the parties' written agreement. Here, the negligence claim is premised on the collapse of ISR's drydock on June 24, 2016. That dry dock collapse occurred before the agreement's performance deadline of July 10, 2016. Because the negligence claim is premised on an occurrence during the performance period of the parties' agreement, it appears that the economic loss rule could preclude Great Lakes' negligence/gross negligence claim *in toto*. But, ISR did not move for summary judgment on Great Lakes' negligence claim. It only argues in its Motion for Summary Judgment that certain damages sought by Great Lakes are not recoverable on any kind of claim – negligence included – based on the terms of the parties' MSA. Because that issue – whether a negligence claim can be maintained in this case apart from the breach of contract claims – is not a posture to be

considered herein, ISR's Motion for Partial Summary Judgment to limit damages in this case to those provided for, or allowed, by the MSA and its Exhibit C liquidated damages provision, cannot be granted. Therefore, summary judgment is not, at this juncture, warranted for either party on any aspect of Great Lakes' negligence/gross negligence claim.

**3. Bailment Counterclaim**

Great Lakes argues that the damage to the Dredge Texas' ladder occurred when the Dredge Texas was in the sole care, custody and control of ISR and that it is entitled to damages, outside of the parties' agreement, for repair of the Dredge Texas' ladder, as well as lost profits occasioned by the additional time needed to repair the ladder. ISR argues that Great Lakes cannot maintain a bailment claim given the terms of the MSA.

Under Texas law, a bailment is created when one person delivers personal property to another in trust for a specific purpose and the other person accepts that property with the express or implied agreement that the trust will be carried out and the property returned as directed. *Braniff Airways v. Exxon Co.*, 814 F.2d 1030, 1038 (5th Cir. 1987). Under a bailment arrangement, the bailee has the duty to exercise ordinary care over the goods placed in its care. *Allright, Inc. v. Elledge*, 515 S.W.2d 266, 267 (Tex. 1974); *Ampco Auto Parks, Inc. v. Williams*, 517 S.W.2d 401, 403 (Tex. Civ. App.--Dallas 1974, writ ref'd n.r.e.); *West v. Slaughter*, 384 S.W.2d 185, 187 (Tex. Civ. App.--Waco 1964, writ ref'd n.r.e.).

Here, like the negligence claim, ISR generally argues in its Motion for Partial Summary Judgment that summary judgment is warranted on Great Lakes' bailment claim because section 19.3 of the MSA disallows recovery of "indirect, incidental, consequential, punitive or special damages," and section 17.3 of the MSA required Great Lakes to leave the Dredge Texas, and its ladder, with

ISR to repair at ISR's "sole expense." The genuine issues of material fact on the parties' respective breach of contract claims, and the issues related to which party first breached a "material" aspect/provision of their agreement, have direct bearing on Great Lakes' bailment claim. While the MSA provided that the Dredge Texas was to be in the "exclusive custody" of ISR while the work on it was being performed, § 12.0 MSA, and that "if, during the performance of the Work, [ISR] damages the Vessel or any other property of [Great Lakes], ISR shall promptly repair such damages to the satisfaction of [Great Lakes] and at [ISR's] sole expense," § 17.3 MSA, fact questions as to when a "material" breach of the agreement occurred, and by whom, affects the viability of Great Lakes' bailment claim, and the damages it seeks related thereto. As such, genuine issues of material fact on the breach of contract claims preclude summary judgment – for either side – on the bailment claim.

## IV. Conclusion and Recommendation

Based on the foregoing, and the conclusion that genuine issues of material fact preclude summary judgment on the parties' breach of contract claims, that those genuine issues of material fact affect the other claims alleged by the parties, the Magistrate Judge RECOMMENDS that the parties' Motions for Partial Summary Judgment (Document Nos. 36 & 48) both be DENIED.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d

89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the ten day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 13th______ day of January______, 2022.

Frances H. Stacy
United States Magistrate Judge